ROCK LAKE ESTATES UNIT OWNERS ASSOCIATION, INC.,
Plaintiff-Respondent,

v.

TOWNSHIP OF LAKE MILLS, Defendant, DeLoris E.
McLAY, Defendant-Third Party Plaintiff-Appellant,†

Carolyn R. FARRELL-CAMPBELL, John E. Campbell, William R. Avery, Patricia M. Avery, Wayne E. Elliott,

Delores C. Elliott, Harold Heitz, Margaret Heitz, Edward J. Thompson, June M. Thompson, Peter H. Boer, Janice M. Boer, Martin G. Lira, Robert D. Nelson, Lois P. Nelson, Eugene Lauritzen, Mary Lauritzen, Leroy E. Sobania, Bonnie J. Sobania, John A. McInnis, Jacqualin Schenck, Mary Ann I. Spangler, Clifford R. Roach, Joan R. Roach, Ruth M. Berthold, Jean E. Swanson, Marcelo A. Peinado, Judith L. Peinado, Laura M. Schroeder, Roy T. Lacey, James G. Gates, Georgiana Gates, First American Bank & Trust Co., as Co-Trustee of the Baumann Management Trust, Edward J. Dobbratz, Janet E. Dobbratz, Alfred W. Marshall, Geraldine M. Marshall, Emil Patrick, Dawn A. Lira, Third-Party Defendants.

Court of Appeals

*No. 94–2488. Submitted on briefs May 9, 1995.—Decided June 15, 1995.*

(Also reported in 536 N.W.2d 415.)

†Petition to review denied.

352

For the defendant-third party plaintiff-appellant the cause was submitted on the briefs of *Chris J. Trebatoski* and *Paul E. Benson* of *Michael, Best & Friedrich* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *John H. Short* of *Vance, Wilcox, Short & Ristow, S.C.*, of Fort Atkinson.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J. This appeal involves a dispute between the Rock Lake Estates condominium owners'

association and one of its members, DeLoris McLay, who is also the condominium's developer. The association commenced the action when, several years after creating the condominium, McLay attempted to expand it. The trial court granted the association's motion for summary judgment, declaring McLay's actions illegal under the Condominium Ownership Act, ch. 703, STATS., and the original condominium declaration, and McLay appeals.

██

The issues are whether the trial court erred as a matter of law in determining that: (1) McLay failed to qualify Rock Lake Estates as an "expanding condominium" within the meaning of § 703.26, STATS.,[1] so as to allow its expansion; (2) McLay's attempted dedication of a roadway over condominium lands to gain access to an adjacent parcel of property was void; and (3) McLay had failed to establish her entitlement to an easement for access to her property. All are questions of law, involving either the interpretation of contract provisions or the interpretation and application of statutory and case law to the facts. As a result, our review is de novo. *Dippel v. Wisconsin Patients Compensation Fund*, 161 Wis. 2d 854, 858, 468 N.W.2d 789, 791 (Ct. App. 1991). We affirm the judgment.

---

[1] As will be discussed in greater detail below, § 703.26, STATS., allows a developer to designate in the original declaration that the condominium may be expanded in the future, subject to several conditions set forth in the statute.

The basic facts are not in dispute.[2] In 1983, McLay created the condominium[3] on a parcel of land she owned in Jefferson County by subjecting the property to a condominium declaration under ch. 703, STATS. A condominium is created by filing a declaration with the register of deeds in the county in which the land is located. Section 703.07(1), STATS. Pursuant to § 703.09(1), STATS., the declaration is to contain, among other things, a description of the condominium lands showing the intended units and common areas, together with other specified information about the project and the rights and interests of persons purchasing the units. A declaration may be amended only upon the written consent of at least two-thirds of the unit owners (or such greater percentage as may be stated in the declaration). Section 703.09(2).

Of particular import in this case is § 703.26, STATS., which governs expansion of condominiums. If a developer wishes to expand the condominium beyond its initial size at some time in the future, he or she may include in the condominium declaration a reservation of expansion rights for a period not to exceed ten years. Section 703.26(2)(d). In order for the project to be considered an "expanding condominium" under the statute, the declaration must, among other things, state the maximum number of units that may be added in the future and include a general outline of the land,

---

[2] Where, as here, both parties move for summary judgment, we generally consider the facts to be stipulated, leaving only questions of law for resolution. *Lucas v. Godfrey*, 161 Wis. 2d 51, 57, 467 N.W.2d 180, 183 (Ct. App. 1991).

[3] A "condominium" is not a building or structure but a form of property ownership. The term is defined in § 703.02(4), STATS., as "property subject to a condominium declaration established under this chapter."

buildings and common areas that may be added. Section 703.26(2)(b) and (c).

The condominium declaration filed by McLay in 1983 described the condominium as beginning with an initial "phase" consisting of four buildings. One, labeled "Building A," was to contain five units, and each unit in the building was described in detail. This portion of the declaration also stated: "Additional buildings shall contain five . . . or more units." An attachment to the declaration contained floor plans for Building A, as well as descriptions of the condominium's common areas. A provision in the declaration entitled "Phased Development; Easements; Reservations" stated that McLay "shall from time to time subject additional residential property (approximately 23.5 acres) to development as condominiums and common areas (in the amount of 26 buildings)."[4]

In May 1983, McLay and the then-unit owners signed an amendment to the declaration adding a plan for the construction of piers on the property, limited by the county zoning administrator to "130 boat slips if the condominium project proceeds to its full extent." In December 1984, McLay and the owners filed a second amendment, limited to matters of property insurance.

In July and October 1987, McLay filed a plat amendment showing an area of "Expandable Condominium Lands" and an overall "Site Development

---

[4] McLay claims that, despite the fact that the legal description of the property subject to the 1983 condominium declaration included the entire parcel she owned, she intended to include only a portion of her land in the declaration, using that portion for the construction of four units and reserving the remainder for future development of the additional units. As will be seen below, we conclude that she has failed to establish her claim that the legal description in the declaration should be disregarded as a "scrivener's error."

Map" outlining plans for future buildings and public roadways within the lands and describing the original declaration as "the property in which the condominium is located." The documents were filed by McLay alone, without the unit owners' signatures. Then, in September 1991, McLay dedicated a roadway within these lands to the Town of Lake Mills in order to provide access to a parcel of property adjacent to the condominium area.

Finally, on March 19, 1993, again without the approval of the unit owners, McLay filed a purported "third amendment" to the declaration stating her intention to expand the condominium to a total of 128 units in twenty-four buildings. She also filed a legal description which she claimed to represent the "original expansion real estate."

The condominium owners' association then brought this action seeking a declaration that the project was not an "expanding condominium" within the meaning of § 703.26, STATS., that McLay's attempted road dedication was invalid and that she was not entitled to an easement over condominium lands to reach her adjacent property. The trial court agreed and granted the association's motion for summary judgment.

## I. Is the Project an "Expanding Condominium"?

McLay acknowledges that her initial declaration instruments "do not strictly conform to the requirements of [§ 703.26, STATS.]" She argues, however, that her "substantial conformity" to the statutory requirements should be sufficient to establish the project as an "expanding condominium." Failing that, she contends that the third amendment to the condominium declara-

358

tion meets all the criteria of § 703.26. We disagree in both instances.

## A. *Substantial Compliance with § 703.26, Stats.*

McLay begins her "substantial compliance" argument by referring us to § 703.30(2), STATS., which provides as follows:

> The provisions of any condominium instruments and bylaws filed under this chapter shall be liberally construed to facilitate the creation and operation of the condominium. So long as the condominium instruments and bylaws substantially conform with the requirements of this chapter, no variance from the requirements shall affect the condominium status of the property in question nor the title of any unit owner to his or her unit, votes and percentage interests in the common elements and in common expenses and common surpluses.

First, as the association points out—and as the trial court ruled—the statute, on its face, deals with variances from the statutory requirements relating to "the condominium status of the property" and the title of unit owners. Its direction that the statutes be liberally interpreted is geared toward "facilitat[ing] the creation and operation of the condominium." We agree with the association that the issues raised by McLay relate to the project's status as an "expandable condominium" and affect neither its status or operation as a condominium nor the unit owners' title.

Nor do we think McLay's reliance on an Oregon case, *Dickey v. Barnes*, 519 P.2d 1252 (Or. 1974), warrants the result she seeks here. She points to language in *Dickey* indicating that a failure to strictly follow the

Oregon statutory procedures for forming a condominium was not fatal to the project's condominium status, because to hold otherwise would result in "defeating the original intention of the parties . . . ." *Id.* at 1254. That is, of course, the effect of § 703.30(2), STATS., and nothing in McLay's reference indicates that the *Dickey* court was concerned with anything other than the condominium status of the project, or that the case involved any question of an "expandable condominium" (assuming Oregon has such a statute). Even considering McLay's "substantial compliance" argument point by point, it fails.

As noted above, McLay's original condominium declaration described the project as encompassing her entire lands. She asks us to "disregard" that description as a mere "scrivener's error" and to construe (or reform) the declaration to reflect only a portion of that property. She does not point us to any portion of the record for evidence to substantiate her "scrivener's error" assertion, however.[5] Instead, she asks us to infer a drafting lapse from the following premise, which she constructs in her brief: if the declaration covered all the land, then all land not specifically assigned to the described living units would be owned in common, and that would conflict with other portions of the declaration specifically designating common areas and contemplating the addition of more such land in the future.

---

[5] As a general rule, we do not consider arguments based on factual assertions that are unsupported by references to the record. *Dieck v. Unified Sch. Dist.*, 157 Wis. 2d 134, 148 n.9, 458 N.W.2d 565, 571 (Ct. App. 1990), *aff'd,* 165 Wis. 2d 458, 477 N.W.2d 613 (1991).

From that premise, McLay argues that "the scrivener's error in the legal description should be disregarded as a matter of law." We disagree. As the association points out, the declaration's definition of "common elements" as all land not comprising the living units is consistent with § 703.02(2), STATS.,[6] and the conflicting description restricting the common elements area is not consistent with the statute. Section 703.30(4), STATS., states, "If there is any conflict between any provisions of any condominium instruments . . . and any provisions of this chapter, the provisions of this chapter shall control." Even so, we do not see the inconsistency[7] McLay points to as warranting the result she urges on this appeal.

Pointing to a statement in § 703.30(5), STATS., that "[c]ondominium instruments shall be construed together," which McLay states requires us to take a "holistic view" of the documents, she argues that other documents filed after the 1983 declaration compel us to construe the declaration as establishing an "expandable condominium" despite its failure to comply with the requirements of § 703.26, STATS.

The first document to which she refers is the May 18, 1983, amendment to the declaration, which incor-

---

[6] Section 703.02(2), STATS., defines "common elements" as "all of a condominium except its units."

[7] As noted above, the original declaration indicated McLay's intention to create a twenty-six-building condominium development on 23.5 acres of "additional residential property." And while McLay does not specifically argue the point, we believe that this provision, considered in conjunction with the declaration's description of the condominium as comprising McLay's entire parcel, may reasonably be read to refer to the development of property other than—or "in addition to"—that described in the declaration.

porates a letter from the county zoning administrator referring to future "extension or expansion" of the boat slips and limiting the number of boat slips "if the condominium project proceeds to its full extent." As we have noted above, to constitute an "expandable condominium," a declaration must, among other things, "describe each parcel of property" and "show the maximum number of units" that may be added to the condominium, state the percentage interests in common areas and voting rights that will accompany the new units and include a plat showing the "outlines of the land, buildings, and common elements of new property that may be added . . . ." Section 703.26(2)(a)-(c), STATS. We agree with the association and the trial court that whether McLay contemplated additional boat slips—even as many as 130—at the time of the declaration has little, if anything, to do with the requirements of the statute.

McLay also claims that "amendments" she filed in 1987 "identify the existing development, the boundary of the common elements, the area of 'expandable lands,' and the location of future buildings," all in compliance with § 703.26, STATS. These purported amendments, however, were signed and filed by McLay alone and thus violate the mandate of § 703.09(2), STATS., that amendments to condominium declarations require the written consent of at least two-thirds of the unit owners in order to be effective. Moreover, it appears that at least fourteen units had been sold at the time these documents were filed, and the association argues—persuasively, we think—that even if subsequent purchasers may be considered to have had notice of some claim on McLay's part to a right to expand the project, the prior owners had no such

notice; notice to unit owners is, of course, one of the primary purposes of the statute.[8]

Finally, McLay contends that because some of the unit owners stated in their depositions that they had either been told or understood that more units were to be built on the existing lands, they "knew or should have known that they were getting an expandable condominium when they purchased their units." We do not see the fact that some owners may have held such beliefs as justification—either by itself or in connection with McLay's other claims—for rewriting the condominium declaration to comply with the several specific requirements of § 703.26, STATS. We agree with the trial court's observation that, while some of the requirements of the statute may be "technical" in nature and thus not call for strict enforcement, "many requirements provide prospective purchasers with information so that they may understand the [nature of] the property for which they are bargaining." After outlining the declaration's failure to comply with the specific provisions of § 703.26 discussed above, the trial

---

[8] The same may be said for McLay's contention that because "documents currently on file with the Jefferson County Land Surveyor's office identify the property [she owned], the extent of the current condominium development and the boundaries of the condominium common areas," we must consider all unit owners to be "charged with notice of the existence of these documents" when they purchased the units and thus aware that "they took title with knowledge that this was an expandable condominium."

That is the extent of the argument. McLay does not indicate in her brief when these documents were filed, or even what they are. She does not indicate whether they were in the chain of title of unit properties. Under § 706.09, STATS., documents not in the chain of title do not constitute constructive notice of their contents to subsequent purchasers.

court rejected McLay's argument that the failures were "[u]nsubstantial," concluding: "Unfortunately, the omissions are very substantial and do not put a buyer on notice that he or she is purchasing one of 128 to 130 prospective units and that . . . ratio of common elements."

We reject McLay's argument that she "substantially complied" with the requirements of the statute.

### B. The Third Amendment to the Declaration

McLay argues that we should nonetheless determine that her project is an "expandable condominium" under § 703.26, STATS., because her third amendment to the declaration meets all requirements of the statute. The association concedes that the amendment, filed only days short of ten years after the filing of the original declaration, contains provisions that comply with most, if not all, of the requirements of § 703.26. It points out, however, that even if McLay were to be permitted to wait ten years to attempt to retroactively amend or "correct" a declaration, the amendment is a nullity because it was not approved by the unit owners, as required by both § 703.09(2), STATS., and the original declaration itself.[9]

McLay concedes the absence of the required signatures; she argues, however, that the amendment was merely "technical and corrective" and thus permitted by another section of the declaration that permits the developer to "make technical and corrective amend-

---

[9] As we have noted above, both § 703.09(2), STATS., and the declaration permit amendments only upon the written consent of at least two-thirds of all unit owners, and it is conceded that this was not done with respect to McLay's third amendment.

ments to this Declaration . . . without consent of the Unit Owners . . . ."

The association suggests that a provision in a declaration permitting *any* amendments without complying with the requirements of § 703.09(2), STATS., must itself be considered a nullity in light of the plain requirement of the statute. We need not decide that point, however, because we again agree with the trial court's determination that

> the substantial nature of the amendments attempted in the third amendment to the declaration defy any definition of "technical" or "corrective." Spelling errors are corre[ctive]; increasing the number of units four-fold is not "corrective." It may be a technical amendment to add a surveyor's certificate to a plat, but it is not a technical amendment to create a plat.

Finally, McLay points out that earlier amendments to the declaration adding new units to the original four were not signed by the unit owners. She contends that if we are to hold that those amendments were also invalid for lack of existing owners' signatures, the purchasers of units added in the intervening years would not own the units—a result she claims is both "inequitable and absurd."

The trial court rejected the argument, stating: "Finally, [McLay] warns that the entire condominium will unravel if the court requires consent to the third amendment. This court addresses the issues before it, will not speculate, and does not believe it 'must invalidate . . . every other amendment to the Condominium Plat that was filed previously.' "

Like the trial court, we consider only issues that are before us,[10] and there is no challenge to the validity of any of those prior amendments on this appeal. McLay has not persuaded us that the trial court erred in concluding that she had failed to establish Rock Lake Estates as an "expanding condominium" within the meaning of § 703.26, STATS.[11]

## II. The Roadway Dedication

In September 1991, McLay recorded a certified survey purporting to dedicate an extension of Canterbury Lane, the only public road in the condominium, as a town road. The trial court held that McLay's failure to comply with the notice provisions of § 840.11, STATS., 1991-92, is fatal to the attempted dedication. The statute provides in pertinent part as follows:

---

[10] McLay accuses the trial court of "side-stepping" the issue, but neither that court nor this one has a duty to consider issues other than those presented to it. *See Waushara County v. Graf*, 166 Wis. 2d 442, 453, 480 N.W.2d 16, 20, *cert. denied*, 113 S. Ct. 269 (1992).

[11] Because we have determined that McLay's purported third amendment to the declaration was ineffective, we need not consider her challenge to the trial court's ruling that § 703.26(2)(d), STATS., which states that a right to expand a condominium "may be reserved in the declaration for a period not exceeding 10 years," allows her ten years from the filing of the declaration to reserve a right to expand, as opposed to ten years to complete the expansion. We note, however, that her argument contradicts the plain language of the statute, which, as the trial court ruled, "allows a declarant to reserve expansion for a period of time [but] does not allow the developer a 10-year right to reserve the right to expand." Under the statute, the right to expand a condominium, *if properly reserved in the declaration*, expires ten years after the declaration is recorded.

> Every person who makes an application . . . for laying out . . . or extending any street . . . shall . . . file a notice of the pendency of such application, containing his [or her] name and a brief statement of the object thereof and a map and description of the land to be affected thereby . . . . Neglect to comply with these provisions shall render all proceedings based upon such application void . . . .

McLay argues that the statute is inapplicable to her attempted dedication. She claims it applies only to dedications by municipalities, not to private citizens. The trial court rejected the argument, as do we.

The statute makes no reference to municipalities; it applies, as it plainly reads, to "[e]very person" wishing to lay out or extend a street. And the fact that a predecessor statute enacted 114 years ago was described as "AN ACT to provide for the recording of lands taken for streets . . . by city or village corporations," Laws of 1881, ch. 319, § 1, does not, as McLay argues, establish that the present statute is so limited.[12]

Nor are we persuaded by McLay's argument that because § 840.11, STATS., 1991-92, is only cross-referenced in §§ 66.296(6) and 66.297(1), STATS., the requirements of § 840.11 are limited to proceedings under those statutes, which deal with discontinuance

---

[12] Indeed, the law to which McLay refers, Laws of 1881, ch. 319, § 1, directed city and village clerks to transmit copies of all resolutions condemning lands for street or highway purposes to the register of deeds in the county in which the lands were located. The law before us, as indicated, requires "[e]very person" desiring to lay out or extend a road to file a notice of the application and a description of the affected property with the register of deeds. McLay's argument attempts to apply the "legislative history" of an apple to an orange.

of streets and alleys and "public grounds" by munici-
palities. She offers no authority for the proposition that
a "cross-reference," which the Legislative Reference
Bureau intends simply to "make[ ] it possible to iden-
tify additional statutory provisions related to statutes
already found by other means," should determine the
interpretation of acts of the Wisconsin Legislature. *See*
Cross-References, Wisconsin Statutes, 1991-92, at
5156.

Finally, McLay contends that if the notice require-
ments of § 840.11, STATS., 1991-92, are applied to her
attempted street dedication, the provisions of ch. 236,
STATS., permitting dedication of streets by certified sur-
vey maps[13] would be "trumped," or "rendered
superfluous," by § 840.11. We do not see how. We see no
conflict or inconsistency in the two statutes. Where, as
provided in § 236.34(1)(e), STATS., all owners of any
interest in the affected land consent to the dedication
and join in the conveyance, the notice requirements of
§ 840.11 are inapplicable. Where, as occurred here, the
dedication is attempted by only one of several owners,
the requirements apply.

The condominium unit owners neither joined in
nor consented to McLay's purported street dedication.
Even if the dedication had been discussed with owners
in prior years, as McLay asserts, and even if the presi-
dent of the owners' association indicated agreement
with the dedication sometime prior to its occurrence, in
the meantime approximately one-third of the units had
changed hands. As a result, said the trial court, "the

---

[13] Section 236.34(1)(e), STATS., specifically provides, among
other things, that a certified survey map may be used for dedica-
tion of streets and other public areas "when owners' certificates
and mortgagees' certificates [as provided in § 236.21(2)(a),
STATS.] have been executed . . . ."

conveyance by Ms. McLay was without consent of all unit owners . . . ."

Finally, McLay argues that the association either waived its right to object to the 1991 dedication extending the road over condominium common areas or should be estopped from so objecting, because it failed to either vote on or object to the dedication of the first segment of the road in 1986. She claims that she relied on the association's "prior conduct" in neither voting on the 1986 dedication nor objecting to it, and that to allow the association to object to the 1991 dedication would be detrimental to her interests because she needs the new portion of the road to reach her adjacent property.

She cites no authority for the proposition, other than to refer us to pattern jury instructions indicating that an estoppel will arise when one party's action or inaction induces reliance by another to his or her detriment, and defining waiver as the knowing relinquishment of a known right. *See* WIS J I—CIVIL 3057 and 3074 (1993). But absent some arguable connection between the bare facts just referred to and general descriptions of waiver and estoppel gleaned from the jury instructions, we come to an impasse. The argument is undeveloped, and we decline to consider it. *See Fritz v. McGrath*, 146 Wis. 2d 681, 686, 431 N.W.2d 751, 753 (Ct. App. 1988) (appellate court does not consider arguments "broadly stated but never specifically argued").

McLay has not persuaded us that the trial court erred in granting summary judgment to the association on this issue.

## III. McLay's Easement Claim

McLay argues that even if her roadway dedication claim should fail, she should be granted an easement over the lands comprising the attempted dedication in order to gain access to her adjacent property. She claims that she reserved such an easement in the original condominium and, alternatively, that she has acquired either a "constructive easement" or an "easement by necessity" over the land.

She bases her first argument on a paragraph in the declaration entitled "Phased Development; Easements; Reservations," which provides in part as follows:

> The declarant . . . reserve[s] all rights to an existing two-story residence . . . lying southwesterly of building "A", together with the right to use DeLoris Lane and Canterbury Lane . . . as presently laid out. Upon removal of said residence . . . said land and rights-of-way will revert to declarant to develop into another building site or common areas of the [condominium]. . . .

Here, too, her argument is largely undeveloped: she states only that this language "is discretionary and provides for an effective easement no matter what determination the Court makes with respect to whether or not [the project was an] expandable condominium . . . from the beginning." And she says simply that "[b]ecause the trial court failed to properly construe these provisions . . . its decision should be reversed and this Court should find that . . . McLay properly reserved an easement . . . to access her adjacent property." As before, the general nature of the argument makes it difficult to assess.

 The association claims, and the trial court ruled, that the language we have quoted above did no more than establish an easement to McLay's residence while it existed, and, upon the removal of the residence, it allowed her to develop another building or common area on the site. We see no other reasonable reading of the paragraph. It does not reserve an easement or interest over condominium lands for any purpose other than access to the then-existing building. Plainly, it does not reserve use of that land as a "bridge" to create still other rights-of-way for McLay's use.[14]

McLay bases her claim that she has a "constructive easement" over the subject lands on the provisions of § 706.09(2)(a), STATS. The statute generally describes situations where a purchaser of land may take the property free from any adverse or inconsistent claim of which he or she lacks notice. "Notice" is defined in subsection (2)(a) as follows:

> (2) A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:
> (a) Such purchaser has affirmative notice . . . of the existence of such prior outstanding claim, including notice, actual or constructive, arising

---

[14] McLay also refers to language in the declaration stating that "[u]ntil all units have been sold . . . Declarant reserves the right to continue development work . . . using . . . Common Elements, and do all other acts it deems necessary in connection with the development and sale of Units in the Condominium . . . ." All this language does, however, is reserve to McLay the right to continue development work on the condominium for the stated period. She does not indicate how it creates an easement to adjacent lands, either expressly or by implication.

> from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises . . . but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious . . . .

McLay claims that because, over time, she has "openly and notoriously" used and improved the "roadway," all unit owners "should be charged with notice of the existence of this portion of the road and of [its] various uses."

Section 706.09, STATS., however, does not create interests in land. By its plain terms, it deals only with the circumstances in which a purchaser of land will be held to notice of adverse interests. Interests in land arising or created through adverse possession, or "adverse use," are governed by § 893.28, STATS., which provides, among other things, that "[c]ontinuous adverse use of rights in real estate of another for at least 20 years . . . establishes the prescriptive right to continue the use." Thus, even though McLay may have used the "right-of-way since 1983," as she claims, she has not established any claim to an easement by prescriptive or adverse use under § 893.28.

An easement "by necessity" is not the same as a prescriptive easement. It is something less, and it is found to exist in cases where an owner sells a "landlocked" parcel to another. In such a situation, the law will recognize a "way of necessity" in the grantee over the land retained by the grantor. *Ludke v. Egan*, 87 Wis. 2d 221, 229-30, 274 N.W.2d 641, 645 (1979).

McLay is not the grantee of the adjacent property she claims is landlocked; she is the grant*or*. If in fact her adjacent property is landlocked, the situation resulted not from any grant of the property to her but by her own act in conveying away her highway access. As the trial court noted: "The conveyances which resulted in landlocking . . . were made by Ms. McLay." She has not established her entitlement to a "way of necessity."[15]

*By the Court.*—Judgment affirmed.

[15] Finally, McLay contends that because the association's board of directors told her in 1989 and 1990 that she could dedicate property for the continuation of the existing roadway, the unit owners not only have "validated the 1991 dedication" but have "given [her] an easement over that road. She asserts that § 703.15(3)(b)5, STATS., gives condominium associations that power to "[g]rant easements through or over the common elements" of the condominium and that [n]either the trial court, nor the Association, ha[s] a persuasive answer to [her] argument that the Association granted her an easement when it instructed her to dedicate the continuation of Canterbury Lane as a township road."

Without more, these two generally stated and unamplified assertions do not persuade us that the condominium unit owners, either individually or through their association, granted McLay an easement. Indeed, it has long been recognized that an easement is an interest in land subject to the statute of frauds, *Negus v. Madison Gas & Elec. Co.*, 112 Wis. 2d 52, 58, 331 N.W.2d 658, 662 (Ct. App. 1983), and McLay's argument does not point to any evidence in the record of a written document granting her an easement over condominium lands.