NEWPORT CONDOMINIUM ASSOCIATION, INC., a nonstock, not for profit corporation, Plaintiff-Respondent,

v.

CONCORD-WISCONSIN, INC., a Wisconsin corporation, Defendant-Respondent.

Michelle TOMERA and Craig Tomera, Defendants-Third Party Plaintiffs-Appellants,

v.

Thomas C. RICCI, LTD. PROFIT SHARING PLAN, f/k/a Thomas C. Ricci Pension and Trust, Thomas C. Ricci and Phyllis J. Ricci, Third Party Defendants-Respondents.

Court of Appeals

*No. 95–0869. Submitted on briefs August 12, 1996.—Decided October 23, 1996.*

(Also reported in 556 N.W.2d 775.)

577

On behalf of the defendants-third party plaintiffs-appellants, the cause was submitted on the brief of *Lisle W. Blackbourn* of *Godfrey, Neshek, Worth & Leibsle, S.C.* of Elkhorn.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *William Swindal, Esq.* of *Hinshaw & Culbertson* of Chicago, Illinois. On behalf of plaintiff-respondent, the cause was submitted on the briefs of *Nicholas J. Loniello* of *Loniello, Johnson & Simonini.*

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J. Michelle and Craig Tomera (the Tomeras) appeal from a summary judgment in favor of Newport Condominium Association, Inc. (Association). The Tomeras argue that the adoption of a Restated Declaration and Plat (Restated Declaration), which redefined the veranda as a limited

common element appurtenant to Concord-Wisconsin, Inc.'s (Concord) unit, without the consent of all owners was improper. The Tomeras also question the validity of an amendment adopted by the Association in 1980. We conclude that the reallocation of the veranda from a common element to a limited common element within the Restated Declaration was proper under § 703.09(2), STATS., and that any reduction in condominium value suffered by the Tomeras is recoverable under § 703.09(3)(a). Accordingly, we affirm the trial court.[1]

The Association is an association of owners of Newport Condominium located on Lake Geneva.[2] The condominium consists of seven units and was established by an original declaration and plat in 1978.[3] The Tomeras have owned Unit 3N since July 1980. The remaining units are owned or controlled by Concord-Wisconsin, Inc.(Unit 1RL); Thomas C. Ricci Ltd. Profit Sharing Plan (Units 2S, 2N, 3S and 3C); and Phyllis J. Ricci (Unit 2C), who together control over seventy-five percent of all of the voting rights or interest in the common elements of the Association.

---

[1] Due to our decision regarding the Restated Declaration, we find it unnecessary to address the validity of the 1980 amendment. *City of Waukesha v. Town Bd.*, 198 Wis. 2d 592, 601, 543 N.W.2d 515, 518 (Ct. App. 1995) (if a decision on one point disposes of an appeal, this court need not decide other issues raised).

[2] Newport Condominium has since been renamed Stone Manor Condominium.

[3] The property at issue in this appeal was the subject of a federal lawsuit in which Judge Reynolds of the United States District Court for the Eastern District of Wisconsin held that the property was an expandable condominium with the seven declared units possessing 100% of the undivided percentage interests in the common elements of the condominium.

The lawsuit was originally commenced by the Association against Concord in November 1992. The Association sought a declaration of interest that the second amendment, which attempted to reclassify a grassed area of the exterior grounds, referred to as the "veranda," from a common area to a limited common area appurtenant only to Unit 1RL, was invalid. However, in November 1993, Concord and Ricci reached a settlement whereby Ricci agreed to the amendment of the condominium declaration and directed the Association to dismiss the complaint. Consequently, the Tomeras intervened and adopted the Association's complaint as part of their cross-claim, counterclaim and third-party complaint.

In 1994, the owners of the condominium, except the intervening defendants and Phyllis Ricci, adopted a Restated Declaration by greater than three-fourths vote. This decision included defining the veranda as a limited common element appurtenant to Unit 1RL. Additionally, a part of the roof was classified as a limited common element, as well as a part of the basement and various other areas on the condominium grounds. Also in 1994, the board of directors adopted resolutions relating to the Restated Declaration. The Tomeras objected to and refused to consent to the Restated Declaration and the board's resolutions.

Competing motions for summary judgment were made in order to determine the validity of the Restated Declaration. The trial court issued a final judgment, concluding: "I hold the Restated Declaration to be valid, the reallocation of the use of the veranda to be within the Board's powers to restate with a three-fourths vote. It follows then that other common areas reallocated were done so validly. Tomeras' remedy lies in § 703.09(3)(a)." The Tomeras appeal.

The Tomeras argue that the trial court erred by granting Concord's motion for summary judgment. We review summary judgment decisions using the same methodology as the trial court. *M & I First Nat'l Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995); § 802.08(2), STATS. We observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & I First Nat'l Bank*, 195 Wis. 2d at 496-97, 536 N.W.2d at 182; *see also* § 802.08(2). Because no dispute exists among the material facts here, issues of law are all that remain.

The Tomeras contend that the reallocation of the veranda as a limited common element by less than all of the unit owners constituted a change in their percentage ownership in the common element and was improper. This argument requires us to construe provisions within Wisconsin's Condominium Ownership Act, codified in ch. 703, STATS., and then apply the facts of this case to them.[4] The "application of a statute and interpretation of an unambiguous written agreement involve questions of law, which we independently review." *Aluminum Indus. v. Camelot Trails Condominium Corp.*, 194 Wis. 2d 574, 581, 535 N.W.2d 74, 77 (Ct. App. 1995). In construing a statute, we are to give effect to the intent of the legislature. *Castle Corp. v. DOR*, 142 Wis. 2d 716, 720, 419 N.W.2d 709, 710 (Ct. App. 1987). To ascertain legislative intent, we first look to the language of the statute. If it

---

[4] Because we conclude that statutes within ch. 703, STATS., adequately govern the issue, we need not consider the case law from foreign jurisdictions.

is not ambiguous, then we are not permitted to use interpretation and construction techniques because the words of the statute must be given their obvious and ordinary meaning. *See Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 319, 332 N.W.2d 821, 823-24 (Ct. App. 1983).

We note some additional tenets of statutory construction which are relevant to this case. The entire section of a statute and related sections are to be considered in its construction or interpretation; we do not read statutes out of context. *See State v. Barnes,* 127 Wis. 2d 34, 37, 377 N.W.2d 624, 625 (Ct. App. 1985). Statutes relating to the same subject matter are to be construed together and harmonized. *State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980). The cardinal rule in interpreting statutes is that the purpose of the whole act is to be sought and is favored over a construction which will defeat the manifest object of the act. *Milwaukee County v. DILHR,* 80 Wis. 2d 445, 453, 259 N.W.2d 118, 122 (1977).

With these principles in mind, we conclude that §§ 703.09 and 703.13, STATS., are clear and unambiguous. Section 703.13(4) states that the percentage interest a condominium owner possesses in a common element "may not be changed without the written consent of all unit owners . . . ." In contrast, § 703.09(2) provides that an association may amend its declaration with "the written consent of at least two-thirds of the unit owners . . . ." These statutes clearly permit the Association to amend the entire declaration and plat without the Tomeras' agreement, unless the amendments alter the percentage of ownership interest in any of the owners' common elements.

The Association's declaration allocated the percentage of ownership interest in common elements based on the square footage of the condominium unit owned. Essentially this establishes three means of changing an owner's interest in the common elements. First, if additional units were added, then any percentage share in the common elements would decrease accordingly. Second, if the total square footage of an owner's condominium changed, then that owner's percentage of total living space would change, thereby altering the percentage of ownership in the common elements. The difference would either be added to or subtracted from another unit owner's interest, or in the case where a change in the total living space of all the condominiums occurred, the percentage interest of all the owners would be reallocated. Third, if the Association elected to allocate the percentage in the common elements by assigning each condominium an equal share, each unit would own one-seventh of the common elements or 14.29%.

The Tomeras contend that the Restated Declaration is invalid because it changed the common element status of the veranda to a limited common element, thereby restricting their use and reducing their interest in the common elements. The Tomeras have confused the concepts of percentage ownership with the value of their unit.

By changing the veranda from a common element to a limited common element, the Restated Declaration did not reduce the Tomeras' percentage of ownership interest in the veranda. The amendments merely reduced the *value* of the Tomeras' individual unit, while increasing the value of Unit 1RL. The Tomeras still own 10.61% of all the common elements, but they have lost their unlimited use of the veranda. If a sale of

the entire building occurred, then the Tomeras would still receive 10.61% of the proceeds. If, however, the Tomeras sold their individual unit, then presumably it would bring a lower price because of the reduced use of the veranda.[5]

The legislature has provided a remedy for the Tomeras' loss of value in their condominium under § 703.09(3)(a), STATS. Section 703.09(3)(a) provides:

> If an amendment to a condominium declaration has the effect of reducing the value of any unit owner's interest in any common element, including any limited common element, and increases the value . . . of any other unit owner's interest in the common element or limited common element, then the . . . other unit owner shall compensate the unit owner the value of whose interest is reduced in the amount of the reduction in value, either in cash or by other consideration acceptable to the unit owner.

Because the reallocation of the veranda's use reduced the Tomeras' condominium value, while increasing Unit 1RL's value, the Tomeras' remedy lies with the owners of Unit 1RL.

We conclude that the reallocation of the veranda from a common element to a limited common element by the Restated Declaration was proper under § 703.09(2), STATS. We further conclude that the reduction in condominium value suffered by the Tomeras is recoverable under § 703.09(3)(a), STATS.

*By the Court.*—Judgment affirmed.

---

[5] Obviously, the sale price of Unit 1RL would likely increase in value based on its unlimited access to and use of the veranda.