APPLE VALLEY GARDENS ASSOCIATION, INC.,
Plaintiff-Respondent,

v.

Gloria MacHutta and Steven MacHutta,
Defendants-Appellants.†

Court of Appeals

*No. 2007AP191. Submitted on briefs October 11, 2007.*
*—Decided November 28, 2007.*

2007 WI App 270

(Also reported in 743 N.W.2d 483.)

† Petition to review denied 4/14/08.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Randall L. Nash, Esq.*, of *O'Neil, Cannon, Hollman, DeJong, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mathew R. Jelenchick*, and *Brian A. Romans*, of *Niebler, Pyzyk, Klaver & Carrig, L.L.P.*, of Menomonee Falls.

Before Brown, C.J., Anderson, P.J., and Nettesheim, J.

¶ 1. NETTESHEIM, J. Apple Valley Gardens Association, Inc., a condominium owners' association, sued spouses Steven and Gloria MacHutta to enforce an amended bylaw requiring owner occupancy relative to a unit owned by Gloria. On cross-motions for summary

judgment, the trial court ruled in favor of the Association and against the MacHuttas. On appeal the MacHuttas contend that (1) the bylaw amendment is unenforceable because WIS. STAT. § 703.09(1)(g) (2005–06)[1] requires that all use restrictions be recorded in the condominium declaration; (2) such rental restrictions make the title unmarketable, in violation of WIS. STAT. § 703.10(6) and *Bankers Trust Co. of Cal., N.A. v. Bregant*, 2003 WI App 86, 261 Wis. 2d 855, 661 N.W.2d 498; and (3) the bylaw amendment violates the parties' 1988 settlement agreement which, the MacHuttas assert, specifically granted them rental privileges.

¶ 2. We disagree. We conclude that WIS. STAT. § 703.10(3) expressly permits use restrictions to be in the bylaws, that the restrictions do not violate § 703.10(6), and that because the 1988 agreement addressed only Steven's right to rent his unit, the owner occupancy amendment is enforceable against Gloria. We therefore affirm.

## BACKGROUND

¶ 3. The history is somewhat lengthy but the parties maintain, as they have throughout, that the material facts are undisputed. Apple Valley Gardens condominium and its owners' association were established in 1979. Steven MacHutta owns Unit 2–110; Gloria owns Unit 2–206. Steven was the condominium's builder, developer, declarant and incorporator. The recorded declaration provided in part:

8. PURPOSE-RESTRICTION ON USE. The buildings and each of the units are intended for the purpose

[1] All references to the Wisconsin Statutes are to the 2005–06 version.

of single family residential use only and are restricted to that use. *Any lease or oral or written rental agreement shall not relieve an owner from his [or her] obligation to pay common expenses or any other obligations imposed upon unit owners by this Declaration.*

(Emphasis added.)

¶ 4. In 1988, Steven and Gloria owned fifteen units which they leased to tenants. Concerned about the number of leased units and the MacHuttas' disproportionate voting control, the Association sought in earlier litigation to compel the MacHuttas to sell the units. The parties resolved the conflict through a settlement agreement ("the 1988 agreement"), under which Steven agreed to make diligent efforts to promote sales of the units and to retain no more than four of the fifteen units. The 1988 agreement, with asterisks and alterations in font size reproduced as in the original, provided in relevant part:

1. STEVEN A. MACHUTTA shall immediately begin to sell, through reasonable efforts, the 15 condominium units he owns at Apple Valley Gardens Condominiums .... Steven A. Machutta shall be precluded from renting or leasing said units, whether by then outstanding leases, extensions, renewals or otherwise, on and after September 1, 1990, unless he is able to prove to the satisfaction of the Court ... that he has undertaken reasonable efforts to sell said units. In no event and under no circumstances shall STEVEN A. MACHUTTA be allowed to rent or lease any of the Units on or after September 1, 1991. Nothing herein shall be construed to preclude STEVEN A. MACHUTTA from retaining one Unit for his personal use or occupancy,* nor to preclude STEVEN A. MACHUTTA from gifting or transferring any of the Units to four immediate family members, provided that the purposes of this provision relative to the lease or rental of the Units is not so frustrated. *including all rights incidental to said use

784

and occupancy, including but not limited to the right to rent said Unit. **

. . . .

3. In the event the present rental agreements or leases for the Units now rented by STEVEN A. MACHUTTA are terminated for any reason, STEVEN A. MACHUTTA shall be entitled to enter into further rental or lease agreements for such Units only upon terms which comply with sections 9.1–9.3 of the Apple Valley Gardens Condominium By-laws, as amended. Any such further rental or lease agreement shall further provide that the rental or lease may be terminated upon the sale of the Unit. Nothing in this paragraph shall be construed to contradict the requirements of paragraph 1 herein.

** It is the intention of the parties that STEVEN A. MACHUTTA and his immediate family and/or his business interest shall own no more than four (4) total units if said units are not sold to third-parties and are retained or transferred to family members.

Gloria did not own Unit 2–206 at the time of the 1988 agreement.

¶ 5. In December 2002, the Association voted by more than two-thirds to amend the bylaws to prohibit the rental of any units as of January 1, 2003. Existing leases, including one to a tenant in the unit Gloria then owned, were grandfathered in. The owner occupancy bylaw amendment provides in part:

Article VI, ¶ 6.1:

j. <u>Owner occupied.</u>

 i. Effective January 1, 2003, all units are required to be owner occupied. No residential unit owner shall rent, lease or otherwise so demise any residential unit or any part therein. Owners

shall not permit the use of said unit by any party other than owner or owner's immediate family member.

ii. An owner's observance of and performance under a rental agreement, lease, or other instrument granting occupancy in a residential unit in effect as of December 18, 2002, shall not be a violation of this subparagraph (j). . . . When the existing tenants . . . vacate their respective units, said units shall become owner occupied under this subparagraph (j), irrespective of the effective date of the rental agreement, lease, or other instrument granting occupancy in a residential unit.

The voting membership also duly amended Article IX, ¶ 9.1, "Consent for Transfer or Lease." The amended ¶ 9.1 required the board of directors' written consent to renew or extend any lease or rental agreement, but expressly provided that the amendment did not "displace, limit, restrict or otherwise compromise the rules and regulations under Article VI, paragraph 6.1, subparagraph (j) . . .", the December 2002 amendment barring rental or leasing of units effective January 1, 2003.

¶ 6. In August 2004, Gloria's tenant vacated Unit 2–206. The MacHuttas submitted for the board's approval a prospective tenant's lease application and credit report, which the board formally rejected based on the bylaw amendment requiring owner occupancy. When Gloria proceeded to rent Unit 2–206 to the new tenant anyway, the board's attorney advised the MacHuttas that the lease violated Association bylaws.

¶ 7. In March 2005, the Association commenced this action seeking a declaratory ruling that the 2002 amendment was enforceable, that Gloria was in violation of the amendment and that the 1988 agreement did

not excuse her default. The MacHuttas counterclaimed that the Association had breached the 1988 agreement and tortiously interfered with the Unit 2–206 rental contract. They moved for judgment on the pleadings on the sole ground that the 2002 amendment violates WIS. STAT. § 703.10(6), as construed in *Bankers Trust*. The Association countered that the MacHuttas misinterpreted *Bankers Trust* and § 703.10(6). The MacHuttas' reply brief asserted that the owner occupancy requirement also violates WIS. STAT. § 703.09(1)(g), which mandates that a condominium declaration contain a statement of intended purpose and use restrictions. The circuit court denied the MacHuttas' motion, and the MacHuttas unsuccessfully petitioned this court for leave to appeal that order.

¶ 8. Both parties then moved for summary judgment. The MacHuttas again contended that passage and enforcement of the 2002 amendment violated WIS. STAT. §§ 703.09(1)(g) and 703.10(6), and added that enforcement would violate the 1988 agreement. The Association argued that § 703.10(3) requires compliance with duly passed bylaws and the 1988 agreement does not excuse disregard of the bylaws. In its brief in response to the MacHuttas' motion, the Association argued that while the 1988 agreement permitted Steven certain rental privileges, it did not do the same for Gloria, other family members, or their business interests. The MacHuttas' reply brief reiterated their stance that the court should grant summary judgment to them, despite urging the court to consider extrinsic evidence to resolve any ambiguity. The circuit court, the Honorable Patrick C. Haughney presiding, denied both parties' motions, deeming a full trial the "more appropriate" route.

¶ 9. Due to a judicial rotation, the case was assigned to the Honorable Paul F. Reilly, who resurrected

the possibility of summary judgment. The parties filed letter briefs summarizing their positions and referring the court to their earlier filings. Upon an examination of the parties' submissions, the court deemed the matter appropriate for resolution by summary judgment. The court concluded that WIS. STAT. § 703.09(1)(g) does not prohibit placing use restrictions in the bylaws; the 2002 amendment did not violate WIS. STAT. § 703.10(6); and the 1988 agreement addressed Steven's rental rights, not Gloria's right to lease Unit 2–206. The court therefore denied the MacHuttas' summary judgment motion and granted the Association's. The MacHuttas appeal.

## DISCUSSION

¶ 10. We review summary judgment decisions using the same methodology as the trial court. *Newport Condo. Ass'n, Inc. v. Concord-Wisconsin, Inc.*, 205 Wis. 2d 577, 582, 556 N.W.2d 775 (Ct. App. 1996); WIS. STAT. § 802.08(2). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Newport Condo. Ass'n*, 205 Wis. 2d at 582. Where, as here, the parties file cross-motions for summary judgment and neither argues that factual disputes bar the other's motion, the facts are deemed stipulated, leaving us to determine issues of law. *See Millen v. Thomas*, 201 Wis. 2d 675, 682–83, 550 N.W.2d 134 (Ct. App. 1996). Any stipulation, however, remains subject to the rule that summary judgment may be granted only if no material issue of fact is presented by the parties' respective evidentiary facts. *See id.* at 683 n.2.

## A. WIS. STAT. § 703.09(1)(g) and the Condominium Declaration

¶ 11. The MacHuttas contend that WIS. STAT. § 703.09(1)(g) mandates that all restrictions be stated in the declaration, a recorded instrument, to give prospective buyers notice of restrictions that may impact on their ownership interest. Pointing to the declaration's language that "[a]ny lease or oral or written rental agreement . . ." does not relieve an owner of the obligation to otherwise comply with the provisions of the declaration, the MacHuttas argue that Gloria is entitled to rent her unit. They reason that use restrictions must be recited in the declaration and, since the owner occupancy requirement was enacted only through bylaw amendment, the amendment is unenforceable against them.

¶ 12. We turn to the statutes governing a condominium's declaration and bylaws. "A condominium declaration shall contain [a] . . . [s]tatement of the purposes for which the building and each of the units are intended and restricted as to use." WIS. STAT. § 703.09(1)(g). The declaration is the instrument through which a property becomes subject to WIS. STAT. ch. 703, the Condominium Ownership Act, and which, when recorded with the plat, creates the condominium. WIS. STAT. §§ 703.01, 703.02(8) and 703.07(1). Every condominium unit owner "shall comply strictly" with the bylaws and rules adopted under the bylaws, as amended from time to time. WIS. STAT. § 703.10(1). The bylaws may contain "any other provision regarding the management and operation of the condominium, including any restriction on or requirement respecting the use" of the units. Sec. 703.10(3).

789

¶ 13. The trial court harmonized the declaration, bylaws and the statutes. It held that, although the declaration allowed units to be rented, nothing in it forbade the Association from amending its bylaws to require owner occupancy; the declaration expressly allows the Association to set rules and regulations and mandates compliance with them; that WIS. STAT. § 703.10(3) permits the bylaws to contain use restrictions; and § 703.10(1) dictates strict compliance with the bylaws.

¶ 14. The MacHuttas contend, however, that use restrictions must appear in the declaration because lien holders, buyers and tenants rely on that recorded instrument for notice, which is why, they argue, the legislature made amending the declaration more difficult than amending bylaws. *Compare* WIS. STAT. § 703.09(2) (procedure for amending declaration) *and* WIS. STAT. § 703.093 (alternative procedure for amending declaration) *with* WIS. STAT. § 703.10(5) (procedure for amending bylaws). They acknowledge that § 703.10(3) allows the bylaws to contain use restrictions, but they contend this extends only to matters of management and operation such as "limit[ing] pool hours or establish[ing] restrictions as to meetings."

¶ 15. The MacHuttas also suggest that the Association opted to amend the bylaws to circumvent the provision in the declaration permitting rental agreements. We return to the specific language of the declaration:

> 8. PURPOSE—RESTRICTION ON USE. The buildings and each of the units are intended for the *purpose* of single family residential use only and are *restricted to that use.* Any lease or oral or written rental agreement shall not relieve an owner from his [or her] obligation to pay common expenses or any other obligations imposed upon unit owners by this Declaration.

(Emphasis added.) This language clearly states the "purpose" and the "restriction on use": single-family residential use. The further language regarding leases or rental occurs in the context of emphasizing an owner's obligations in the event of such agreements, not as an affirmative grant of a defined right or privilege. Had Gloria's tenant not vacated Unit 2–206, that lease could have continued even today. We read the language of the declaration regarding leases and rental agreements as applying to that scenario.

¶ 16. In short, the MacHuttas' argument has too narrow a focus. Steven subjected his property to all of WIS. STAT. ch. 703 when he became the declarant of Apple Valley Gardens condominium. *See* WIS. STAT. § 703.02(7), (8). We must consider as a whole and harmonize related sections of a statute, *see Newport Condo. Ass'n*, 205 Wis. 2d at 583, and remember that the more specific statutory language controls over the more general, *Fred Rueping Leather Co. v. City of Fond du Lac*, 99 Wis. 2d 1, 5, 298 N.W.2d 227 (Ct. App. 1980). WISCONSIN STAT. § 703.09(1)(g) requires the declaration to contain a statement of intended purpose and use restrictions; WIS. STAT. § 703.10(3) permits the bylaws to contain use restrictions; and § 703.10(1) directs that unit owners "shall comply strictly" with the bylaws, the rules adopted thereunder, and any amendments to them. Ignoring the plain language of § 703.10(3) would effectively render it superfluous. Basic rules of statutory interpretation forbid this result. *See Fred Rueping Leather Co.*, 99 Wis. 2d at 6.

¶ 17. The statutory scheme also provides a checks-and-balances arrangement. The declarant often is the developer, as was the case here. Permitting the bylaws to contain use restrictions allows the Associa-

791

tion to more fairly share in the voting power. In any event, it is not our role to comment on the correctness of the legislative choice or to envision other options. The statute says what it says and we—and the MacHuttas—are bound by it. As the Association observes, however, even if the declaration now is defective because it, too, should have been amended to include the rental restriction—a conclusion we do not draw—the MacHuttas do not state why that would make the 2002 bylaw amendment unenforceable.

¶ 18. We agree with the circuit court that nothing in the declaration prohibited the Association from amending the bylaws to require owner occupancy. It provided that each unit owner "shall abide by and be subject to" all duties and obligations arising under the Association's bylaws, rules and regulations of the Association, and empowers the Association to make reasonable rules and regulations governing the use of the units. Reading the declaration, bylaws and statutes together, we conclude that the amendment was permissible and is enforceable.

*B. Wis. Stat. § 703.10(6)*

¶ 19. An aim of the 2002 amendment was to "[p]reserve the high standards of maintenance, care and other benefits achieved from the low turn-over of occupants." The MacHuttas assert the amendment violates Wis. Stat. § 703.10(6), which says that bylaws cannot render unmarketable or otherwise affect a condominium unit title. They look for support to *Bankers Trust* and a legal treatise. Neither gives the backing they need.

792

¶ 20. *Bankers Trust* involved a foreclosure sale of a residential condominium unit. *Bankers Trust Co.*, 261 Wis. 2d 855, ¶ 1. The homeowner's association appealed from the order confirming the sale on grounds that the confirmation violated a duly recorded ownership use limitation. *Id.* In *Bankers Trust*, as here, the condominium bylaws did not require owner occupancy when the buyer purchased his unit. *See id.*, ¶ 2. A later amendment required that sales after a certain date be only to owners who would reside in the unit purchased. *Id.* Soon after, Bankers Trust foreclosed on a unit and Steven Green, d/b/a Atlas Holding, was high bidder at the sheriff's sale. *Id.*, ¶ 4. The homeowner's association objected to the confirmation of the sale to Green because he did not intend to live in the unit. *Id.* The court of appeals affirmed the circuit court's confirmation of the sale because at the time of the confirmation hearing, any failure to occupy had not occurred, making the association's objections premature. *Id.*, ¶ 15. The court recognized that under WIS. STAT. § 703.10(6), a condominium unit title cannot be rendered unmarketable or otherwise affected by any provision of the bylaws. *Bankers Trust Co.*, 261 Wis. 2d 855, ¶ 16. Accordingly, the association simply could not use its bylaw restriction to block the transfer of title, because that would render the title unmarketable and "otherwise affected." *Id.*, ¶ 18.

██

¶ 21. Despite some factual similarities, *Bankers Trust* does not carry the day for the MacHuttas. The Association here is not attempting to block a sale but to enforce a use restriction against a current owner. While this particular use restriction may negatively affect a unit's appeal to some potential buyers, it does not render the title "unmarketable" in the full legal sense of that term. An unmarketable title is one which is not trans-

ferable. *See id.* Restricting further leasing of a unit does not affect an owner's right to alienate his or her property; it affects only the use of the unit. *See LeFebvre v. Osterndorf*, 87 Wis. 2d 525, 531–32, 275 N.W.2d 154 (Ct. App. 1979). "[R]easonable restrictions concerning use, occupancy and transfer of condominium units are necessary for the operation and protection of the owners in the condominium concept." *Woodside Vill. Condo. Ass'n v. Jahren*, 806 So. 2d 452, 456 (Fla. 2002) (citation omitted).[2]

¶ 22. The MacHuttas next look to a treatise on drafting condominium documents in which the authors state that they "do not consider the association bylaws to be the appropriate place for putting the use restrictions." JESSE S. ISHIKAWA & BRIAN W. MULLINS, DRAFTER'S GUIDE TO WISCONSIN CONDOMINIUM DOCUMENTS § 3.65, Practice Tip (State Bar of Wisconsin CLE Books, 2004). Ishikawa and Mullins caution that, in the wake of *Bankers Trust*, restrictions on use that affect marketability could be rendered unenforceable if placed in the bylaws. ISHIKAWA & MULLINS, *supra* § 6.39 and Comment.

¶ 23. But this caution must be read in context. The authors go on to state:

> [WISCONSIN STAT. §] 703.10(3) specifically states that the bylaws may contain restrictions on, and requirements respecting, the use and maintenance of the units and the common elements. As a matter of tidiness, it is probably better practice to put use restrictions within either the declaration or the rules and regulations.

---

[2] This also disposes of the MacHuttas' related argument which raises the specter of future thwarted sales in view of the Association president's testimony that the Association would refuse to approve a sale to a prospective buyer who intended only to rent out the unit.

Ishikawa & Mullins, *supra* § 6.39. The authors then note that steering clear of putting use restrictions in the bylaws "would appear to be bolstered" by the *Bankers Trust* decision, which "relied in part upon [§] 703.10(6) to reject application of an 'owner occupancy' requirement to a unit about to be purchased [at] foreclosure." Ishikawa & Mullins, *supra* § 6.39. They continue:

> Although [§] 703.10(6) appears to do nothing more than attempt to refine the concept of marketable title as it applies to condominium projects, *Bankers Trust* held that the section, in fact, prevents title to a condominium unit from being rendered unmarketable or otherwise affected by the bylaws . . . .
>
>> *Comment.* Arguably, *any* restriction on use affects marketability of title and would, under the logic followed by the [*Bankers Trust* court], be rendered unenforceable if included in the bylaws. This argument would conflict with the plain language of [§] 703.10(3) authorizing use restrictions to be contained within the bylaws. The argument can be avoided altogether if the use restrictions are placed not in the bylaws, but in the rules and regulations.

Ishikawa & Mullins, *supra* § 6.39.

¶ 24. We do not substantially quibble with the authors' comments. However, nowhere do they unequivocally state that use restrictions must be in the declaration; rather, they observe that "[u]se restrictions often appear in the declaration, but they can just as easily be placed within the association's bylaws or rules and regulations." Ishikawa & Mullins, *supra* § 3.65.

¶ 25. The authors then advise that placement should be guided by the flexibility desired. Of the three, "the declaration is the most difficult to amend, the rules and regulations the least difficult, and the bylaws somewhere in the middle." *Id.* We read the caution as

one gleaned from the authors' considerable experience in real estate law. In other words, placing use restrictions in the declaration rather than in the more easily amended bylaws may be a matter of savvy, rather than correctness, to better stave off potential future challenges to them. The statutes permit placing use restrictions in the bylaws, and we already have distinguished *Bankers Trust*. We read the cautions against placing restrictions in the bylaws as practice pointers, not mandates. Other factual scenarios may demand other results, but here we conclude that the owner occupancy requirement in the bylaws is enforceable against Gloria.

## C. The 1988 Agreement

¶ 26. Finally, the MacHuttas argue that the parties' 1988 agreement prevents enforcement of the 2002 amendment. They say the agreement's asterisked language expressly allowed them to retain and rent condominium units and that all of the evidence confirms that they specifically negotiated for the additional language to permit them to rent out up to four units. We disagree. The unit at issue is Gloria's; the agreement is limited to Steven's rights and obligations.

¶ 27. The interpretation of a contract presents a question of law which we review de novo. *Rock Lake Estates Unit Owners Ass'n v. Township of Lake Mills*, 195 Wis. 2d 348, 355, 536 N.W.2d 415 (Ct. App. 1995). If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence, even though a party may have construed it differently. *See Woodward Commc'ns, Inc. v. Shockley Commc'ns*

*Corp.*, 2001 WI App 30, ¶ 9, 240 Wis. 2d 492, 622 N.W.2d 756. Objective rather than subjective intent is the test. *Shelley v. Moir*, 138 Wis. 2d 218, 222, 405 N.W. 2d 737 (Ct. App. 1987). Therefore, if the agreement is plain on its face, we will not look beyond it to extrinsic evidence that the MacHuttas assert confirms their interpretation.

¶ 28. The agreement here is crudely structured and less than artfully drafted, but we cannot say the relevant paragraphs are ambiguous. The agreement's introductory paragraph describes the parties to the agreement:

> In consideration of the mutual covenants, agreements, and releases contained herein, APPLE VALLEY GARDENS ASSOCIATION, INC. AND STEVEN A. MACHUTTA, GLORIA MACHUTTA, APPLE VALLEY DEVELOPMENT CORPORATION AND GLOMACK MANAGEMENT COMPANY, all hereinafter referred to collectively as "THE MACHUTTAS" hereby agree to a full and complete settlement of the following claims and disputes between the parties upon the terms and conditions as follows . . . .

In the following paragraphs, the collective term "THE MACHUTTAS" is used where appropriate; where not, the individual entity name ("STEVEN A. MACHUTTA," "STEVEN A. MACHUTTA and/or GLORIA MACHUTTA," or "APPLE VALLEY GARDENS ASSOCIATION, INC.") is used.

¶ 29. The part of the agreement with the asterisked language addresses only Steven's rights and obligations. The first asterisked phrase provides that nothing in the agreement shall be construed to preclude Steven from retaining one unit for his personal use or occupancy, including the right to rent it. Immediately following is the second segment of asterisked

language: "It is the intention of the parties that STEVEN A. MACHUTTA and his immediate family and/or his business interest shall own no more than four (4) total units if said units are not sold to third-parties and are retained or transferred to family members." Nothing in that sentence mentions rental privileges, let alone rental privileges flowing to the family members. The only other references to renting or leasing are restrictive: Steven could gift or transfer any of the units to four immediate family members, "provided that the purposes of this provision relative to the lease or rental of the Units is not so frustrated," and "[i]n no event and under no circumstances shall STEVEN A. MACHUTTA be allowed to rent or lease any of the Units on or after September 1, 1991."

¶ 30. The rental of Gloria's condominium unit led to this dispute. The plain terms of the 1988 agreement addresses Steven's, not Gloria's, rights and obligations. Gloria did not even own Unit 2–206 at that time. The introductory paragraph reveals that the parties appreciated that numerous entities were involved in the agreement, yet only Steven was granted a right to lease or rent out his unit. The agreement does not preclude enforcing the 2002 amendment against Gloria.

*By the Court.*—Order affirmed.