LE FEBVRE, and others, Plaintiffs-Respondents, v. OS-TERNDORF, Defendant-Appellant: SMALLMAN, and others, Defendants.†

Court of Appeals

*No. 77–736. Argued December 13, 1978.—*
*Decided January 9, 1979.*
(Also reported in 275 N.W.2d 154.)

† Petition to review denied.

526

For the appellant the cause was argued by *Richard D. Riebel* with whom on the briefs was *Steinberg Law Offices, S. C.* of Wauwatosa.

For the respondent the cause was argued by *Bryan A. Frame II* with whom on the brief was *Brenner, Brenner & Frame* of Waukesha.

Before Moser, P.J., Brown and Bode, JJ.

MOSER, P.J.   This appeal is from a judgment entered December 19, 1977 granting an injunction against the further rental of condominium units.  The appellant Verne Osterndorf (Osterndorf) is an attorney and was the developer of a condominium complex in the city of Waukesha known as Minooka Park Homes (condominiums).  Of the thirty-two units in the complex, twenty-two were sold under conventional financing while ten were sold under land contracts in 1972.  Five of these units reverted to Osterndorf upon default of the land contracts in 1973.  Osterndorf proceeded to rent these units.

Osterndorf's attorney drafted the declaration and bylaws of the condominiums.  Article VII, section 5 of those bylaws provides:

In order to preserve high standards of maintenance and care and the other benefits from a low turnover of occupants, no unit may be rented without the prior written consent of the Board of Directors. The Board of Directors shall have the obligation to answer any written request by a unit owner accompanied by such information concerning the proposed tenant and the terms of the proposed lease as the Board of Directors uniformly requires, within 10 days after such request and failure to do so within the stipulated time shall constitute a consent by the Board of Directors to the proposed leasing.

The respondents, members of the Board of Directors of the condominiums (board), brought suit on September 10, 1974 seeking an injunction against the continued rental of Osterndorf's five units. Trial to the court was held on January 4, 1977. Judgment was entered December 19, 1977, granting the board an injunction prohibiting Osterndorf from renting any of his current or future units in the condominiums. The injunction was not to be effective until May 1, 1978, in order to allow Osterndorf an opportunity to dispose of the units. The injunction would not take effect at that time if Osterndorf demonstrated that he had made a good faith effort to dispose of the units.

In its findings of fact, the trial court found that Osterndorf had made various requests to rent the units and that the board had denied each of the requests. The court found that Osterndorf had assured a member of the board that he had no intention of continuing to rent the units but would move with all deliberate speed to sell the units. The court found this assurance to be false and misleading since Osterndorf testified that he had not sold the units because it was more profitable to rent them.

The court found that the tenants presented problems peculiar to a condominium area, including a limited and indirect control by the board over the tenants' conduct.

The court found that Osterndorf had advised the board against dealing directly with his tenants and had threatened civil action against the board if it attempted to do so. The court found that the board had difficulty giving notices to nonresident owners and that the tenants were ignorant of the provisions of the declaration and bylaws because Osterndorf had not provided them with the documents. The court found that the tenants had refused to participate in voluntary tasks which helped to reduce maintenance costs, specifically, watering bushes and shoveling sidewalks. Osterndorf did not provide for these chores on behalf of his tenants. The court alluded generally to other problems encountered by various unit owners.

The court found that the board had a substantial basis for refusing to allow Osterndorf to rent his units. The clear intent of the board was found to be to discourage investment ownership and encourage resident ownership. The court found that Osterndorf had rented the units over the objection of the board.

Based on these findings, the trial court concluded that the board was entitled to the requested injunction.

The issues presented on appeal are (1) whether the evidence supports the trial court's findings and conclusions, and (2) whether the trial court properly granted an injunction to the board against further leasing of Osterndorf's units.

### SUFFICIENCY OF EVIDENCE

A trial court's findings of fact will not be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence. That is, a finding based on conflicting evidence will not be set aside if

the trial court, considering the evidence as a whole, could have reasonably reached that conclusion.[1] Osterndorf challenges four of the trial court's findings.

Osterndorf objects first to the finding that he had made false and misleading statements that he intended to sell all of the units and did not intend to continue to rent the units. Osterndorf had written to a unit owner in 1972 that he intended to sell all of the units and would continue making a concerted effort to sell them. There was testimony by a member of the board that she had been told when she purchased her unit that units would not be rented. A clause in the offer to purchase which would have allowed Osterndorf to rent other units was stricken at her request, but the units were rented anyway. Osterndorf admitted that he had not attempted to sell his remaining units because it was more profitable to rent them. Thus, the trial court could have reasonably disregarded Osterndorf's testimony that he had made no assurances that he would sell his units.

Osterndorf's second objection is to the finding that each of Osterndorf's requests for permission to rent had been denied by the board. Each written request entered into evidence was denied by the board. The lack of elaboration on the reasons for the denial does not contradict the trial court's finding that a denial had been made. There was equivocal testimony that there had been an earlier request, but the trial court could have reasonably concluded that the request had not been made.

Osterndorf also objects to the finding that he had threatened civil action against the board if it attempted to deal directly with any of his tenants. Osterndorf admits that he did threaten civil action.[2] Osterndorf now argues that his threat was only directed at certain kinds of contact with his tenants. There was testimony by vari-

---

[1] *E.g., Precision Service Co. v. Schill*, 60 Wis.2d 346, 348, 210 N.W.2d 706, 707 (1973).

[2] Appellant's Reply Brief at 3.

ous members of the board that they felt Osterndorf objected to any direct contact with his tenants. The language of Osterndorf's two letters does not preclude such an interpretation.

Finally, Osterndorf objects to the finding that various unit owners encountered problems with the tenants. While there was some testimony that unit owners also violated the rules, there was testimony that the tenants violated them more often. There was also testimony that it was more difficult to correct problems with tenants because they were not given copies of the condominiums' rules and regulations and because the board had to channel complaints through Osterndorf.

Therefore, we conclude that the trial court's findings of fact were not against the great weight and clear preponderance of the evidence. Those findings support the trial court's conclusion that the board was entitled to an injunction. The propriety of granting that injunction is the next issue.

## PROPRIETY OF INJUNCTION

Osterndorf raises several attacks against the trial court's injunction. The first objection is that granting an injunction against further leasing of the units is an unreasonable restraint on his right to free alienation of property. Osterndorf's right to alienate his property has not been affected. The power of alienation is suspended when it is not possible for one or more persons to convey title in absolute fee.[3] The injunction granted to the board

---

[3] 700.16(2) The power of alienation is suspended when there are no persons in being who, alone or in combination with others, can convey an absolute fee in possession of land, or full ownership of personalty.

does not prevent the transfer of the units; it encourages their sale. Thus, Osterndorf's right to alienate the units is not affected. The injunction affects only Osterndorf's use of the units.[4]

Osterndorf's second attack is that the trial court should not be allowed to enforce the board's unreasonable refusal to permit rental of the units. Each unit owner is obliged to adhere to the condominiums' bylaws, and a failure to comply is enforceable by injunction.[5] The bylaws may provide for restraints on the use of the condominium units for the benefit of all unit owners.[6]

Osterndorf asserts that the board did not follow the requisite procedures of the bylaws when it refused to grant his requested rentals. The applicable provision quoted above places only one requirement on the. board. It must respond to a rental request within ten days. The

---

[4] *See* 15A Am. Jur. 2d *Condominiums* §39 (1976). *Cf. Holiday Out in America at St. Lucie, Inc. v. Bowes,* 285 So.2d 63 (Dist. Ct. App. Fla. 1973) (treating a restriction on the right to rent condominium units as a valid restriction on the use of the property and not a restraint on alienation).

[5] 703.07 **Compliance with covenants, bylaws and administrative provisions.** Each unit owner shall comply strictly with the by-laws and with the administrative rules adopted pursuant thereto, as either of the same are amended from time to time, and with the covenants, conditions, and restrictions set forth in the declaration or in the deed to his unit. Failure to comply with any of the same shall be ground for action to recover sums due, for damages or injunctive relief or both maintainable by the manager or board of directors on behalf of the association of unit owners or, in a proper case, by an aggrieved unit owner.

[6] 703.19 **Contents of bylaws.** The bylaws may provide for: . . .
(10) Such restrictions on and requirements respecting the use and maintenance of the units and the use of the common areas and facilities, not set forth in the declaration, as are designed to prevent unreasonable interference with the use of their respective units and of the common areas and facilities by the several unit owners.

evidence clearly establishes that, except for the first rental request, the board responded within ten days. Thus, the board complied with the requirements of the bylaws with respect to four of the units. After suit had been commenced, but before trial, Osterndorf once again sought to rent the fifth unit. That request was denied within ten days. Therefore, at the time of trial, the board had complied with the terms of the bylaws with respect to all five units.

As Osterndorf points out, however, even though the board complied with the terms of the bylaws, its refusal must not be arbitrary and capricious. A condominium unit is real property for all purposes.[7] The established law of real property is thereby applicable to condominium units. Part of that established law is that an injunction will not be granted unless the court is satisfied that the result would be fair, just, reasonable, and founded on adequate consideration.[8] More specifically, a restriction on the use of real estate must be reasonable under all of the facts and circumstances. That is, it must be for a just purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, and reasonable between the parties.[9]

The facts and circumstances established at trial convince us that the restriction on Osterndorf's use of his units was reasonable. There is no claim of discrimination or malice against Osterndorf. The trial court found

---

[7] 703.04 **Status of the units.** Each unit, together with its undivided interest in the common areas and facilities, shall for all purposes constitute real property.

[8] *McKinnon v. Benedict,* 38 Wis.2d 607, 618, 157 N.W.2d 665, 670 (1968).

[9] *Id.* at 619, 157 N.W.2d at 670, quoting with approval from *Huntley v. Stanchfield,* 174 Wis. 565, 570, 183 N.W. 984, 986 (1921).

that the clear intent of the board was to discourage investment ownership and encourage resident ownership of units. This finding was not contrary to the great weight and clear preponderance of the evidence. Moreover, Osterndorf sought to rent five of the thirty-two units in the complex. While the rental of an isolated unit in a large complex might have a negligible effect, rental of nearly a sixth of the units is likely to have a noticeable effect. Thus, there was a substantial and reasonable economic purpose for restricting Osterndorf's use of his units.

Osterndorf was given a letter explaining the board's position and all of his requests for permission to lease were denied with a short reference to the policy contained in the letter. While the letter contained only a rough outline of the board's policy, Osterndorf was well aware of the reasons for the board's actions. He was the developer of the complex, and his attorney had drafted the bylaws under which the board acted.[10] He was informed in December 1972, a full year before his requests to lease the units were denied by the board, by a resident unit owner that rental of his units would have an adverse effect on the value of the other units. He had originally seen the need to sell all of the units to resident owners and had assured other unit owners that he would dispose of all of the units. Finally, Osterndorf indicated that he wanted to rent the units because it was more profitable, not because he had difficulty finding buyers.

Therefore, the restriction served a just purpose and protected the legitimate interests of the other unit own-

---

[10] We express no opinion whether other unit owners in the complex could have the use of their units restricted in the same manner. Generally, restrictions on the use of real estate, where doubt exists, are construed in favor of the free use of the property. *McKinnon v. Benedict*, 38 Wis.2d at 619, 157 N.W.2d at 670.

ers. Given Osterndorf's knowledge of the reasons for discouraging investment ownership and his own protestations of intent to dispose of the units, it is reasonable to enforce this restriction by injunction.

Osterndorf's final objection to the trial court's injunction is that it is too vague to be enforceable. Osterndorf argues that the reference to "a good faith attempt to dispose of the condominium units" is too vague. "Good faith" is a standard frequently employed in the law, and Osterndorf cites no authority for the proposition that it is vague. In all other respects, the injunction is clear and unambiguous.[11] Therefore, the injunction is not rendered unenforceable by vagueness.

*By the Court.*—Judgment affirmed.

---

[11] Osterndorf also asserts that it is unclear "whether he can proceed to rent without the Board's consent if he makes a 'good faith attempt.'" The trial court's injunction does not provide for a bypass of the board's procedures under any circumstances. A good faith attempt will merely allow Osterndorf to avoid enforcement of the injunction. The board would not be precluded from seeking damages for failure to comply with the bylaws.